FILED

2026 Feb-19  PM 02:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

LEONARD H. MATZ, JR.,     )
                                )
     Plaintiff,           )
                                )
     v.                      )     Case No. 2:24-cv-00637-NAD
                                )
TIFFIN MOTOR HOMES, INC.,     )
                                )
     Defendant.        )

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

For the reasons stated below and on the record in the January 29, 2026 motion hearing, the court **GRANTS** Defendant Tiffin Motor Homes, Inc.'s motion for summary judgment (Doc. 59). The court separately will enter final judgment.

## BACKGROUND

### A.    Procedural background

On August 29, 2023, Plaintiff Leonard H. Matz, Jr. filed an amended complaint against Defendant Tiffin for breach of contract and/or warranty,[1] violation of the federal Magnuson-Moss Warranty Act, and violation of the Nebraska Consumer Protection Act and/or the Nebraska Uniform Deceptive Trade Practices

---

[1] For purposes of this summary judgment motion, the parties have agreed that Nebraska state law applies to Matz's breach of warranty claim. *See* Doc. 64 at 2 n.1.

Act.[2]  Doc. 21.

On May 21, 2024, this case was transferred to this district from the United States District Court for the Northern District of Indiana.  Doc. 39; *see* Doc. 38.  The parties consented to magistrate judge jurisdiction.  Doc. 49; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

On September 12, 2025, Tiffin filed this summary judgment motion with a supporting brief and evidentiary material.  Doc. 59.  The parties fully briefed the motion.  *See* Doc. 63 (Matz response with evidentiary material); Doc. 64 (Tiffin reply with evidentiary material); *see also* Docs. 60, 61, 62 (briefing schedule and extension).

On January 29, 2026, the court held a hearing on this summary judgment motion.  *See* minute entry, entered: 01/29/2026; Doc. 68 (order setting hearing).

On February 2, 2026 (after the motion hearing), Matz filed a supplemental brief in opposition (Doc. 70), along with an exhibit from the hearing (Doc. 71).  On February 3, 2026, Tiffin filed a reply to Matz's supplemental brief (Doc. 72).

**B.    Factual background**

For purposes of this summary judgment motion, the material facts are

---

[2] In response to this summary judgment motion, Matz has agreed to dismiss his claim for violation of the Nebraska Consumer Protection Act and/or the Nebraska Uniform Deceptive Trade Practices Act.  *See* Doc. 63 at 25–26.

undisputed, including the following:

On June 24, 2020, Matz bought a 2020 Vilano 360RL recreational vehicle (RV) manufactured by Vanleigh RV, Inc.[3] from Bish RV One.  Doc. 59 at 1–2; Doc. 63 at 2.  With the RV, Vanleigh issued a one-year limited base warranty and a three-year limited structural warranty (collectively, the "limited warranty").  Doc. 59 at 2; Doc. 63 at 2.  The one-year limited warranty stated that the warranty "only covers material components and parts of the recreational vehicle actually manufactured and made by [Vanleigh]."  Doc. 59-1 at 3.  Similarly, the three-year limited warranty stated that the warranty "only covers material components and parts of the Structural Components actually manufactured by and made by [Vanleigh]."  Doc. 59-1 at 11.  In this regard, the three-year limited warranty also stated that "'Structural Components' consists of: materials and/or workmanship directly attributable to [Vanleigh]," and then "name[d] certain components."  Doc. 59-1 at 11.

Matz sought and received many repairs to the RV under the limited warranty.  Doc. 59 at 3; Doc. 63 at 4.  On November 13, 2020, Matz took the RV to the Tiffin service center in Tishomingo, Mississippi, where 29 reported warranty defects were repaired.  Doc. 21 at 6–7; Doc. 63 at 4–5.  The repairs were completed on February 3, 2021.  Doc. 21 at 6.  From March 23, 2021, to March 25, 2021, the RV returned

---

[3] Vanleigh RV, Inc. is a wholly owned subsidiary of Defendant Tiffin.  Any reference to "Vanleigh" is also a reference to "Tiffin."  *See* Doc. 59 at 1 n.1.

Case 2:24-cv-00637-NAD     Document 73     Filed 02/19/26     Page 4 of 19

to the Tishomingo service center for repairs to 18 reported warranty defects.  Doc. 21 at 7–8; Doc. 63 at 5–6.

From October 21, 2021, to October 28, 2021, the RV went to Boondocks Mobile RV in Tampa, Florida, for repairs to the air conditioner.  Doc. 21 at 8; Doc. 63 at 6.  The RV returned to Boondocks on December 14, 2021, for a repair to the hydraulic pump, which was completed the same day.  Doc. 21 at 8; Doc. 63 at 6.  The RV again returned to Boondocks on January 20, 2022, for one day for reported defects with the rear side skirt and the rear of the living area/box of the trailer.  Doc. 21 at 8; Doc. 63 at 6–7.  On May 17, 2022, the RV went back to Tishomingo for two days for problems with the rear side skirting, a door, and the rear of the living area/box of the trailer.  Doc. 21 at 8; Doc. 63 at 7.

On September 22, 2022, Matz attempted to repair an issue with the RV's slide.  Doc. 21 at 9; Doc. 63 at 7.  While on the phone with the Tiffin service center, Tiffin "represented to [Matz] that it believed the frame was bent and recommended that [Matz] contact a mobile technician to confirm that the frame was bent and send the formal data to Lippert Components, Inc."  Doc. 21 at 9; Doc. 63 at 7.

All of the problems with the RV that Matz reported were repaired under the limited warranty, with the exception of the RV's chassis, slides, and window valances.  Doc. 59 at 3; Doc. 63 at 4.

## LEGAL STANDARD

Summary judgment is appropriate when the movant establishes that "there is no genuine dispute as to any material fact," and that the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[4] And a dispute about a material fact is "genuine," if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

To avoid summary judgment, the nonmovant must go beyond mere allegations to offer specific facts creating a genuine dispute for trial. *Celotex*, 477 U.S. at 324–25. The court's responsibility is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The court must construe all evidence and draw all reasonable inferences in the nonmovant's favor. *Centurion Air Cargo, Inc. v. UPS Co.*, 420 F.3d 1146, 1149 (11th Cir. 2005).

---

[4] *Accord, e.g.*, *Celotex*, 477 U.S. at 322–23 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

Where there is no genuine dispute of material fact for trial, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c).

## DISCUSSION

Even construing the evidence and all reasonable inferences in Matz's favor, as the court must at this stage (*see Centurion Air Cargo*, 420 F.3d at 1149), there is no genuine dispute of material fact for trial.

**I.    There is no genuine dispute of material fact for trial on Matz's claim for breach of the express warranty.**

There is no fact issue for trial on Matz's claim for breach of the express warranty. The record evidence is insufficient for a jury to find or reasonably infer that Vanleigh breached the terms of the limited warranty with respect to the RV's chassis, slides, and/or window valances.

**A.**    With respect to the chassis (and as noted above), the limited warranty expressly "only covers material components and parts of the recreational vehicle actually manufactured and made by [Vanleigh]." Doc. 59-1 at 3; *see* Doc. 59-1 at 11 (similar). The limited warranty also expressly excludes "[d]efects in any component parts or labor of the recreational vehicle . . . which were not manufactured by [Vanleigh]." Doc. 59-1 at 4, 12.

Matz contends that the record evidence is insufficient to show that the RV's chassis was manufactured by Lippert Components, Inc. (which was dismissed from this action on August 29, 2023, *see* Docs. 20, 21), and not by Vanleigh (*see* Doc. 63

at 2–3).  But the only record evidence is that Lippert manufactured the chassis.

For starters, in his deposition, Matz admitted that Lippert, rather than Vanleigh, manufactured the chassis.  *See* Doc. 59-2 at 3 ("Lippert was the initial manufacturer of the chassis."); Doc. 59-2 at 52 ("I believe Lippert was the manufacturer of the chassis.").

Matz argues that he "was not identified as an expert witness in this matter and does not have personal knowledge as to what portions of the frame was or was not manufactured by Vanleigh versus Lippert."  Doc. 63 at 3.  But Melvin Jones, the Southeast service manager for Lippert (Doc. 64-1 at 3), stated in his deposition that "[Vanleigh] bought the chassis from [Lippert]" (Doc. 64-1 at 21).

Further, on April 17, 2023 (before Matz initiated this action on June 15, 2023, *see* Doc. 1), Tiffin confirmed in an e-mail that Lippert is "the manufacturer of [the chassis] and provide[s] [its] own service."  Doc. 64-2 at 1.  Indeed, Matz corresponded with Lippert about repairing the chassis.  Doc. 63-2 at 1–7.

Thus, because the only evidence shows that Lippert, rather than Vanleigh, manufactured the chassis, and because the plain language of the limited warranty specifically excludes "[d]efects in any component parts or labor of the recreational vehicle . . . which were not manufactured by [Vanleigh]" (Doc. 59-1 at 4, 12), no reasonable jury could find or infer that the chassis was covered by Vanleigh's limited warranty.

Matz also argues that the plain language of the limited warranty is ambiguous because there is no "provision within the Limited Warranty that explicitly excludes the frame/chassis." Doc. 63 at 17–20. Under Nebraska law, "[a]mbiguity exists in a document when a word, phrase, or provision therein has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings." *Strunk v. Chromy-Strunk*, 708 N.W.2d 821, 840 (Neb. 2006) (citations omitted). "The fact that parties to a document have or suggest opposing interpretations of the document does not necessarily, or by itself, compel the conclusion that the document is ambiguous." *Id*.

Here, the limited warranty unambiguously excluded from coverage any components of the RV that Vanleigh did not manufacture, and unambiguously covered only components that Vanleigh did manufacture. Doc. 59-1 at 3–4, 11–12. While Matz is correct that the limited warranty also does include certain itemized exclusions (*see* Doc. 59-1 at 4–6, 12–14), a warrantor is not required to specifically list each component or item excluded from coverage, and there is no ambiguity in the limited warranty in this regard. *See, e.g.*, *Bailey v. Monaco Coach Corp.*, 350 F. Supp. 2d 1036, 1041–42 (N.D. Ga. 2004) ("Requiring a warrantor to set forth an exhaustive list, from bumper to bumper, of every included and excluded item would prove unduly burdensome and unnecessary for a clear description of the scope of warranty coverage." (federal claim)), *aff'd*, 168 F. App'x 893 (11th Cir. 2006).

Again, because the only evidence shows that the chassis was not manufactured by Vanleigh, and because the limited warranty unambiguously excluded from coverage any component that was not manufactured by Vanleigh, no reasonable jury could find or infer that the chassis was covered under the limited warranty.

Moreover, even if there were a fact issue for trial as to whether the chassis was covered under the warranty, the limited warranty—and any implied warranty, *see infra* Part III—still required Matz to return the RV for repairs to the chassis, and it is undisputed that Matz did not do so. Under the limited warranty, Matz was obligated to "return the[] vehicle to an authorized dealer for repairs" (Doc. 59-1 at 7), and to "locate and contact [the] nearest authorized [Vanleigh] dealer to schedule an appointment" (Doc. 59-1 at 15).

In this case, the undisputed record evidence shows that Lippert offered to repair the chassis; but Matz refused to take the RV to Lippert for repairs, apparently because the time quoted for repair was "less than what [Matz] was told was appropriate."[5]  Doc. 59-2 at 34–39; *see also* Doc. 59-2 at 39 ("I didn't go back to

---

[5] Matz argues that Lippert's proposed repairs "were offered in bad faith." Doc. 63 at 20. Matz bases this argument on a Lippert technician's initial representation that "it would take four days to repair the frame/chassis." Doc. 63 at 21. Lippert then told Matz that "it would only take '8–12 hours max' to complete the Lippert repairs." Doc. 63 at 21. Matz "believed" that the chassis would not be completely repaired, "as it was roughly 25% of the time the Lippert technician estimated to perform the necessary repairs." Doc. 63 at 21. But, in his deposition, Melvin Jones—the

[Lippert].  I stopped speaking with [Lippert].").  Thus, even if the chassis were covered under the limited warranty, no reasonable jury could find or infer any breach of the warranty, because Matz refused to present the RV for repairs.

**B.**     With respect to the slides, Matz admitted that Vanleigh could not "fix the slides unless the chassis is fixed.  The slides can't go into the box correctly with a sagging chassis."  Doc. 59-2 at 34.  Again (as discussed above), the limited warranty unambiguously obligated Matz to "return the[] vehicle to an authorized dealer for repairs."  Doc. 59-1 at 7.  But, because Matz never presented the RV to Lippert for the chassis repair, Vanleigh could not repair the slides either.  Consequently, no reasonable jury could find or infer that Vanleigh breached the limited warranty as to the slides.

**C.**     With respect to the window valances, Matz testified that they "were never square."  Doc. 59-2 at 28.  But the limited warranty covers only "defects in materials and/or workmanship."  Doc. 59-1 at 3, 11.  And there is not a sufficient evidentiary basis for a reasonable jury to find or infer that the alleged "out of square" window valances were defective in materials and/or workmanship.

The "best means of proving a defect is expert testimony pointing to a specific

---

Southeast service manager for Lippert—clarified that the chassis repair would take 36 hours "without any prep work," but that if Vanleigh "did all the prep work" the repair "would potentially take . . . 12 hours."  Doc. 64-1 at 17–18.  That deposition testimony is undisputed.

defect." *O'Brien v. Cessna Aircraft Co.*, 903 N.W.2d 432, 447 (Neb. 2017).  But there is no expert evidence that the window valances were defective.

Furthermore, "[f]indings of fact as to technical matters beyond the scope of ordinary experience are not warranted in the absence of expert testimony supporting such findings." *Pitts v. Genie Indus., Inc.*, 302 Neb. 88, 100 (2019).  "With respect to the requirement of expert testimony, the test is whether the particular issue can be determined from the evidence presented and the common knowledge and usual experience of the fact finders." *Id.*

Here, whether Matz's perceived flaws with the RV's window valances constituted a manufacturing defect that was covered by the limited warranty is a technical matter that is beyond the ken of the average juror and that requires supporting expert testimony.  There is no expert as to the allegedly defective "out of square" window valances, and on the facts of this case Matz's personal knowledge and observations are not sufficient to create a genuine dispute of material fact for trial.  Without expert testimony, no reasonable jury could find or infer that the "out of square" window valances were defective.

That is particularly true on the facts of this case.  In this regard, the undisputed record evidence shows that Vanleigh constructed three replacement valances at Matz's request, but that Matz believed that the "three replacement valances were more poorly constructed than the ones they were to replace."  Doc. 63-3 at 14.  Matz

told Jamie Myrick, the Vanleigh Warranty Service Manager, that "the replacement valances were substandard and could not be used in [his] RV." Doc. 63-3 at 14–15. But Myrick "vehemently disagreed with [Matz]," and Myrick responded, "Mr. Matz, you have received more warranty service than you deserve." Doc. 63-3 at 15.

So, the record shows not just that Matz believed the window valances "were never square" (Doc. 59-2 at 28), but also that Vanleigh attempted to fix the valances and Matz believed the "three replacement valances were more poorly constructed than the ones they were to replace" (Doc. 63-3 at 14). Yet the record does not show what, if anything, Matz believed was defective about those replacement valances— just that he refused them as "substandard." Doc. 63-3 at 14–15. In any event, without supporting expert testimony, there still is no evidence or guidance on the technical matter of whether either the original or the replacement valances were defective; there is only Matz's personal perception of flaws in the original valances, as well as in the replacement valances. Particularly given Vanleigh's attempt to replace the valances, and Matz's refusal to accept that proposed fix, there is nothing in the record that would allow the jury properly to assess any alleged defect based on their common knowledge and usual experience. *See, e.g.*, *O'Brien*, 903 N.W.2d at 447; *Pitts*, 302 Neb. at 100.

\*    \*    \*

Lastly, because Matz cannot support a claim for breach of the express

warranty under Nebraska state law (*see supra*), Matz likewise cannot support a claim for breach of the express warranty under the federal Magnuson-Moss Warranty Act. *See, e.g.*, *Bailey*, 350 F. Supp. 2d at 1040 ("The [Magnuson-Moss Warranty] Act was intended to supplement, not supplant, state law. Therefore, unless the Act expressly prescribes a regulating rule, courts should apply state law to written and implied warranty claims made under the Act.").

## II.    There is no genuine dispute of material fact for trial on Matz's contention that the limited warranty has failed of its essential purpose.

There is no fact issue for trial on Matz's contention that the limited warranty otherwise has failed of its essential purpose. Aside from the chassis, slides, and window valances (*see supra* Part I), Matz argues that the limited warranty failed of its essential purpose, "when [Vanleigh] failed to repair the RV's defects within a reasonable amount of time." Doc. 63 at 24–25. Matz argues that the repair time was unreasonable because the RV "was out of service by reason of warranty repair for 91 days for the defects," and that "it took Vanleigh . . . nearly 7 months . . . to properly fix the Rear of the Living Area/Box of the Trailer Not Attached to Frame defect." Doc. 63 at 25.

Under Nebraska law, the "purpose of an exclusive remedy of 'repair or replacement' from a buyer's viewpoint is to give him goods which conform to the contract within a reasonable time after a defect is discovered." *John Deere Co. v. Hand*, 211 Neb. 549, 554 (1982). The "limited remedy of repair or replacement of

defective parts fails of its essential purpose," where "the seller is given a reasonable chance to correct defects" ***and*** "the equipment still fails to function properly." *Id.*

Matz argues that "a reasonable jury could conclude that Matz gave Vanleigh a reasonable chance to fix those defects, including the Rear of the Living Area/Box of the Trailer Not Attached [to Frame] defect," and that "Vanleigh failed to repair them within a reasonable amount of time." Doc. 63 at 25. But Nebraska law indicates that a warranty fails of its essential purpose only where the alleged defects are not ultimately repaired—i.e., where "the equipment still fails to function properly." *See John Deere Co.*, 211 Neb. at 554; *id.* at 552 ("[The purchaser] further stated that he had taken the stacker to [the] dealership for repair, and on one occasion had left it there for 3 months but that the needed repairs were never made."); *Lincoln Composites, Inc. v. Firetrace USA, LLC*, 825 F.3d 453, 457 (8th Cir. 2016) ("Some of the tubing was defective and, despite [the manufacturer's] repeated attempts to fix the defect, the tubing failed."); *Joseph v. Western Star Trucks*, No. 8:05CV421, 2007 WL 2156331, at *3 (D. Neb. July 25, 2007) ("Plaintiffs further claim that the problems with the truck and its engine are not repairable.").

Again, with the exception of the chassis, slides, and window valances (*see supra* Part I), it is undisputed that Vanleigh repaired all of Matz's reported defects. Consequently, no reasonable jury could find or infer that Vanleigh breached the limited warranty with respect to these repairs.

Moreover, on the facts of this case, no reasonable jury could find or infer that Vanleigh took an unreasonable amount of time to repair the long list of problems that Matz reported. As noted above, the RV first stayed at the Tishomingo service center for 83 days to repair 29 reported defects, and the RV then returned to Tishomingo for another 3 days to repair an additional 18 reported defects. Doc. 63 at 4–6. In October 2021, the RV also was at Boondocks for eight days for repairs to the air conditioner. Doc. 63 at 6. Matz argues further that Vanleigh took from October 28, 2021, until May 17, 2022, to repair the "Rear of the Living Area/Box of the Trailer Not Attached to Frame defect," but the RV was in Matz's possession during that time. Doc. 63 at 6–7.

Thus, given the number and the extent of the repairs that Matz requested under the warranty, no reasonable jury could find or infer that Vanleigh took an unreasonable amount of time to repair all of those reported defects. *Accord Hines v. Mercedes-Benz USA, LLC*, 358 F. Supp. 2d 1222, 1231 (N.D. Ga. 2005) ("Having reviewed the service history record, . . . this Court finds that there is no genuine issue of material fact that [the warrantor] performed all necessary repairs within a reasonable time and that no reasonable jury could find otherwise." (Georgia law)).

## III. Even if properly pleaded, there is no genuine dispute of material fact for trial on Matz's claim for breach of any implied warranty.

There is no fact issue for trial on Matz's claim for breach of any implied warranty. At oral argument, and in supplemental briefing, Matz clarified that the

amended complaint includes claims for breach of the implied warranty of fitness for a particular purpose and for breach of the implied warranty of merchantability. Doc. 70 at 2. The court assumes without deciding that the amended complaint properly pleaded these implied warranty claims.[6]

Vanleigh's limited warranty states that Vanleigh "expressly disclaims all implied warranties of merchantability and fitness for a particular purpose." Doc. 59-1 at 9, 16 (emphasis omitted). But, as Matz points out (Doc. 70 at 3), and as Vanleigh concedes (Doc. 72 at 5), the Magnuson-Moss Warranty Act does not allow a supplier to disclaim or modify any implied warranty to a consumer for any consumer product if the supplier issues a written warranty to the consumer. 15 U.S.C. § 2308(a) ("No supplier may disclaim or modify . . . any implied warranty to a consumer with respect to such consumer product if . . . such supplier makes any written warranty to the

---

[6] The amended complaint appears to allege any implied warranty claim only as part of the federal Magnuson-Moss Warranty Act claim. *See* Doc. 21 at 14. But, on the plain language of that federal statute, the "term 'implied warranty' means an implied warranty arising under State law." 15 U.S.C. § 2301(7). And, under Nebraska state law, an alleged breach of an express warranty and an alleged breach of an implied warranty are two separate causes of action. *See, e.g.*, *Freeman v. Hoffman-La Roche, Inc.*, 618 N.W.2d 827, 844 (Neb. 2000). Plus, "the implied warranty of fitness for a particular purpose is different than the implied warranty of merchantability." *O'Keefe Elevator Co. v. Second Ave. Properties, Ltd.*, 216 Neb. 170, 174 (1984); *see Murphy v. Spelts-Schultz Lumber Co.*, 481 N.W.2d 422 (Neb. 1992); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests" (cleaned up)).

16

consumer with respect to such consumer product.").

Under Nebraska law, "[a] plaintiff relying on the implied warranty of fitness for a particular purpose must prove that (1) the seller had reason to know of the buyer's particular purpose in buying the goods, (2) the seller had reason to know that the buyer was relying on the seller's skill or judgment to furnish appropriate goods, and (3) the buyer, in fact, relied upon the seller's skill or judgment." *Stones v. Sears, Roebuck & Co.*, 251 Neb. 560, 569 (1997).

In support of this claim, Matz's supplemental brief argues that "the RV is not fit for the recreational purpose for which it was designed," and that "an RV with a bent frame is . . . unfit for recreational purposes." Doc. 70 at 2–3.

But "the warranty of implied fitness for a particular purpose does not apply when the goods in question are purchased and used for ordinary purposes." *Stones*, 251 Neb. 560 at 507.

Here, there is no evidence that Matz purchased the RV for any reason other than its ordinary, intended recreational use, and there is no evidence that Vanleigh knew that Matz was buying the RV for any particular purpose. Indeed, while Matz's supplemental brief argues that "the RV is not fit for the recreational purpose for which it was designed" (Doc. 70 at 2), Matz testified in his deposition that he began living in the RV full-time in September 2021, over a year after he purchased the RV in June 2020; but there still is no argument or evidence that Matz indicated to

Vanleigh that he was purchasing the RV for full-time living. Doc. 59-2 at 13, 40; Doc. 59 at 1. As a result, there can be no genuine dispute of material fact for trial on any claim for breach of the implied warranty of fitness for a particular purpose.

Next, "[t]o establish a breach of implied warranty of merchantability, there must be proof that there was a deviation from the standard of merchantability at the time of sale." *Mennonite Deaconess Home & Hosp., Inc. v. Gates Eng'g, Co.*, 219 Neb. 303, 314 (1985).

While it is undisputed that the RV had a bent chassis, there is no evidence based on which a reasonable jury could find or infer that the RV's chassis was bent at the time of sale. Matz testified that "the chassis problems . . . were measured and detected" ***after*** "th[e] aftermarket suspension was installed." Doc. 59-2 at 47. While Matz also testified that he could not "say for sure whether the[] [chassis problems] existed before or after" the aftermarket suspension was installed (Doc. 59-2 at 47), a jury cannot be left to speculate. *See, e.g.*, *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("speculation does not create a genuine issue of fact"). Thus, on the record facts, there can be no genuine dispute of material fact for trial on any claim for breach of the implied warranty of merchantability.

## CONCLUSION

For the reasons stated above, Vanleigh's summary judgment motion (Doc. 59) is **GRANTED**. Matz's claims are **DISMISSED WITH PREJUDICE**. Separately,

the court will enter final judgment.

      **DONE** and **ORDERED** this February 19, 2026.

_____

**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE